

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

IN RE:                              §
                                    §
DIANE M. DAVIS,                     §       Case No. 09-42865
                                    §       (Chapter 13)
         Debtor.                    §

## MEMORANDUM OPINION

This is a case about an affluent debtor who sought to manipulate bankruptcy procedures to accomplish what the Code prohibits – the elimination of all of her credit card debts despite her obvious ability to repay those debts over time.  The debtor, Diane Davis, obtained confirmation of a plan in which she proposed to pay her credit card debts in full.  The debtor subsequently objected to every claim filed by her creditors based on their alleged failure to attach sufficient documents to their proofs of claim.  The debtor withdrew several objections after the creditors responded.  The Court has before it the debtor's request for a default order sustaining the remaining objections.  The Court exercises its core jurisdiction over this matter, *see* 28 U.S.C. §§ 157(b)(B), and makes the following findings of fact and conclusions of law, *see* FED. R. BANKR. P. 7052.

## I. BACKGROUND

The debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on September 11, 2009.  She is represented by Armstrong Kellett Bartholow P.C. in her bankruptcy case.

The debtor is a single woman with no dependants.  She had been employed as a sales manager for more than three-and-a-half years as of the petition date.  Her gross annual income was $121,760 during 2008.  As of the petition date, she was receiving

gross monthly wages of $10,428 and a monthly income, net of taxes and retirement contributions, of $7,425.05. Her monthly disposable income was $3,923.92.

The debtor owns a home in which she has significant equity. She was current on her payments to the mortgage holder when she filed her bankruptcy petition. She was driving a 2002 BMW 325, which she owned free and clear of any lien. Her bankruptcy schedules reveal that she initiated a chapter 13 case solely for the purpose of addressing her credit card debts. As an above-median-income debtor, the Code would have presumed her case to be abusive if she had sought to receive a discharge of her unsecured debts under chapter 7. *See* 11 U.S.C. § 707(b) (providing for dismissal of chapter 7 cases based on "abuse").[1]

The debtor's Statement of Financial Affairs (Official Form 7) shows that, in the months prior to bankruptcy, she made payments on her credit card accounts with Neiman Marcus and Nordstrom. She listed eight creditors with claims totaling $81,564 in her schedule of general unsecured creditors (Official Form 6, Schedule F), as follows: (1) American Express, with a disputed debt of $3,436; (2) Ameriprise Bank, with a disputed debt of $10,060; (3) Discover Card, with a disputed debt of $15,575; (4) Great Indoors Mastercard, with a disputed debt of $3,888; (5) Neiman Marcus, with a disputed debt of $15,925; (6) Nordstrom Visa, with a disputed debt $13,570; (7) Sears Gold Mastercard, with a disputed debt of $9,960; and (8) Target National Bank, with a disputed debt of $9,150. With respect to each of these debts, the debtor included the following remark in her Schedule F: "Debtor listed the balance shown on last statement; debtor [sic] not

---

[1] As of the petition date, the median annual income for a household size of one in Texas was $38,545. The Bankruptcy Abuse and Consumer Protection Act of 2005 amended § 702(b) to require above-median debtors, who are presumably capable of repaying their creditors, to file Chapter 13 and pay them.

presently able to determine if balance is correct and is uncertain if trade name is correct legal creditor."

The debtor filed a proposed chapter 13 plan on same date she filed her bankruptcy petition.  In paragraph 2, she proposed to make monthly payments of $3,190 to the chapter 13 trustee for 60 months.  She estimated that these monthly payments would result in payment in full to all of her general unsecured creditors, whose claims she estimated at $150,360 in paragraph 7 of her proposed plan.[2]

The debtor estimated the amount of unsecured debts in her plan because she did not know, at the time, which unsecured creditors would file claims in her bankruptcy case.  In a chapter 13 case, general unsecured creditors must file proof of their claims against the debtor in order to receive any distributions from the plan.  *See* 11 U.S.C. § 1325(a)(4) – (5) (requiring the treatment of allowed unsecured claims in a chapter 13 plan).  If an unsecured creditor files a claim, the claim is deemed allowed in the absence of a substantive objection.  *See* 11 U.S.C. § 502(a).

The last day to file claims against the debtor was January 28, 2010.  *See* FED. R. BANKR. P. 3001(c).  By that date, twelve creditors had filed claims using the official proof of claim form (Official Form 10).  Their claims totaled $147,400.68.  The following creditors filed claims in the total amount of $121,902.50 relating to the "disputed" debts described in the debtor's Schedule F:[3]

> (1) Discover Bank filed a claim for $15,757 and attached billing statements for June – November 2009.  The debtor's schedules included a "disputed" claim

---

[2] She chose the estimated amount of $150,360 based on a miscalculation in her bankruptcy schedules. The debtor's schedules state that the total amount of unsecured non-priority debt listed in Schedule F is $150,360.  The total amount of non-priority unsecured debt actually listed in the debtor's Schedule F, in fact, is $81,564.

[3] Great Indoors Mastercard is the only creditor described in the debtor's Schedule F that did not file a claim.

3

for this account in the precise amount claimed by Discover Bank. The Court denominated the claim filed by Discover Bank as claim number one.

(2) Target National Bank filed a claim for $9,366.03 for a credit card account ending in numbers 7590. The debtor scheduled Target National Bank with a "disputed" claim for this account in the amount of $9,150. The Court denominated Target National Bank's claim as claim number three. Target National Bank subsequently transferred its claim to Roundup Funding, LLC, pursuant to Federal Rule of Bankruptcy Procedure 3001(e)(2).

(3) American Express Bank, FSB, filed a claim for $47,454.21 for a credit card account ending in numbers 2004. American Express attached a copy of the billing statement for the period ending September 4, 2009, to the claim. The debtor's schedules included a "disputed" claim for this account in the amount of only $3,436, which is approximately the minimum amount due each month (according to the billing statement). The Court denominated the claim filed by American Express as claim number five.

(4) Ameriprise Bank, FSB, filed a claim for $9,808.68 for a line of credit ending in numbers 9864. Ameriprise Bank attached an account history to the proof of claim. The debtor's schedules included a "disputed" claim for this account in the amount of $10,060. The Court denominated the claim filed by Ameriprise Bank as claim number seven.

(5) Nordstrom fsb filed a claim for $13,568.56 for a credit card account ending in numbers 8701. Nordstrom attached what appears to be a computer screen shot showing basic information about the account. The debtor's schedules included a "disputed" claim for this account in the amount of $13,570. The Court denominated the claim filed by Nordstrom as claim number eight.

(6) PRA Receivables Management, LLC as agent of Portfolio Recovery Assocs, successor in interest to Citibank (South Dakota), N.A. filed a claim in the amount of $9,958 for a "Sears MC" credit card account ending in numbers 4128. PRA Receivables Management attached a one-page summary of account information to its claim. The debtor's schedules included a "disputed" claim in the amount of $9,960 for a Sears Gold Mastercard account ending in numbers 4128. The Court denominated PRA Receivables' claim as claim number ten.

(7) HSBC Bank Nevada, N.A. (Neiman Marcus) filed a claim for $15,922.91 for an account ending in numbers 9392. The debtor's schedules included a "disputed claim" for Neiman Marcus in the amount of $15,925 for an account ending in numbers 9392. The Court denominated the claim filed by Neiman Marcus as claim number twelve.

The following unscheduled creditors filed claims in the total amount of $25,498.18:

(1) American Express Bank, FSB, filed a claim for $14,114.48 for a credit card account ending in numbers 2006. American Express attached a copy of the billing statement for the period ending September 14, 2009, to the claim. The Court denominated this claim as claim number two.

(2) PRA Receivables Management, as agent for Advanta Bank Corp., filed a claim for $7,236.95 for a credit card account ending in numbers 1395. PRA Receivables attached a one-page summary of account information to the claim form. The Court denominated this claim as claim number four.

(3) American Express Bank, FSB, filed a claim for $3,539 for an account ending in numbers 3005. American Express attached a copy of the billing statement for the period ending September 1, 2009, to the claim. The Court denominated this claim as claim number six.

(4) PRA Receivables Management as agent for Portfolio Recovery Associates, LLC, successor in interest to Citibank (South Dakota), N.A., filed a claim for $3,886.75 regarding a "Sears MC" credit card account ending in numbers 0216. PRA Receivables Management attached a one-page summary of account information to its claim. The Court denominated the claim filed by PRA Receivables Management as claim number nine.

(5) PRA Receivables Management as agent of Portfolio Recovery Associates, L.L.C., successor in interest to Citibank (South Dakota), N.A. filed a claim for $260 regarding a "J.Jill/D.M. Mgmt" credit card account ending in numbers 1337. PRA Receivables attached a one-page summary of account information to its claim. The Court denominated the claim filed by PRA Receivables as claim number eleven.

Not surprisingly, none of the debtor's general unsecured creditors objected to her proposed plan. The plan proposed to pay $190,400 to her creditors over 60 months, which would have been more than enough to pay their claims in full. The Court conducted a hearing on confirmation on February 10, 2010. The Court entered an order confirming the debtor's proposed plan on February 17, 2010.

On April 21, 2010, the chapter 13 trustee filed the Trustee's Recommendation Concerning Claims ("TRCC") pursuant to the Local Rules of Bankruptcy Procedure.

The chapter 13 trustee recommended payment to all of the debtor's general unsecured creditors pursuant to the terms of the debtor's confirmed plan. The TRCC required any party who disagreed with the chapter 13 trustee's recommendation to object to the TRCC or to any disputed claim. The debtor timely filed objections to the claims of each and every one of her general unsecured creditors.

As previously discussed, twelve general unsecured creditors filed timely claims in the debtor's case. The debtor disclosed some of these creditors in her schedules; some were not disclosed. Some of the creditors attached the latest billing statement sent to the debtor; some did not. Some of the claims were filed by the original creditors; some were filed by agents or assignees.

Regardless of the identity of the filers or the documents attached to the claims, if any, the debtor raised the identical objection to each of the claims:[4]

> 3. The Debtor objects to [the claim] filed by Claimant because Claimant filed an Unsecured Proof of Claim but did not attach sufficient documents to account for the amount of the debt allegedly owed, to establish that the debt alleged is a legal obligation of Debtor, or that state the terms of the account or debt. Debtor objects to the claim *because there is no document showing any valid, enforceable contractual relationship between Claimant and the Debtor.* Debtor is unable to verify, *based on the documentation filed,* that she owes the amount alleged to the Claimant or that the Claim is due, valid, enforceable, and owing. Therefore, Debtor denies that she owes the Claimant the amount alleged in the Claim.
> 4. Upon submission to Debtor's counsel of sufficient documentation to establish the validity, enforceability, and amount of the claim, Debtor will withdraw this objection.

(Emphasis added.) The debtor submitted substantially identical affidavits in support of each of her claim objections. She states in these affidavits that, "I cannot determine that

---

[4] The debtor's counsel has filed similar objections to unsecured claims in other consumer bankruptcy cases. Indeed, the objections asserted by counsel on behalf of a different client in another chapter 13 case (Case No. 09-43831) are currently under advisement. The objections and affidavits in the present case and Case No. 09-43831 follow a very similar form.

the amount stated on the claim is accurate *because there are no ledgers or other accounting records attached to the proof of claim*." (Emphasis added.) She also states in her affidavits that, *due to the lack of documentation provided by the claimant*, she cannot verify the account, establish that the charges were made within the limitations period, or determine whether the claim was enforceable against her.[5] The affidavits are "bare bones" and do not include any facts which would establish reliability or credibility.

The debtor promptly withdrew several objections after the creditors responded.[6] On June 3, 2010, approximately one month after filing objections to all of her unsecured creditors' claims, the debtor withdrew her objections to the three claims filed by American Express – claim number two (in the amount of $14,114.18), claim number five (in the amount of $47,454.21), and claim number six (in the amount of $3,539.00). In addition, on June 22, 2010, the debtor withdrew her objection to claim number one by Discover Bank (in the amount of $15,575).

On June 11, 2010, Ameriprise Bank filed a response to the debtor's objection to its claim number seven in the amount of $9,808.68. In addition, Ameriprise Bank amended claim number seven to attach additional documentation. In particular, Ameriprise Bank supplemented the account history previously attached to the claim form by attaching copies of the documents signed by the debtor opening a $10,000.00 line of credit. The documents reveal that the debtor originally opened the account in November

---

[5] Like the debtor's claim objections, the supporting affidavits were nearly identical. The only substantive variation was the debtor's inclusion of an objection that the claimant had failed to attach proof of an assignment of debt to the extent the claimant filed the claim as a successor-in-interest to the original credit card issuer.

[6] At a hearing on September 29, 2010, the debtor's counsel orally represented that he withdrew these objections because the creditors had provided him with all of the documents he deemed necessary to establish a claim against his client. Counsel did not offer any testimony or other evidence supporting this representation. Moreover, he did not offer any evidence regarding what documents the creditors allegedly provided to him.

7

1999 for the purpose of paying $5,000.00 to Diners Club and $5,000.00 to Nieman Marcus. On July 15, 2010, the debtor withdrew her objection to the claim filed by Ameriprise Bank.

In response to the debtor's objection, Neiman Marcus amended its claim number twelve in the amount of $15,922.91. In particular, Neiman Marcus attached 35 pages of account history to its amended claim. The debtor has not withdrawn her objection to the claim filed by Neiman Marcus and requests that the Court enter a default order sustaining her objection and disallowing the claim. The debtor likewise seeks a default order sustaining her objection and disallowing the claims of Target National Bank (claim number three in the amount of $9,366.03), Advanta Bank Corp. (claim number four in the amount of $7,236.95), Nordstrom (claim number eight in the amount of $13,568.56), PRA Receivables (for the two Sears credit cards described in claim numbers nine and ten in the total amount of $13,845.61), and PRA Receivables (for the J.Jill/D.M. Mgmt credit card described in claim number eleven in the amount of $260.00). These claimants have not filed responses to the debtor's objections to their claims.

The Court scheduled a hearing on the debtor's remaining objections to claims to be conducted on July 21, 2010. The debtor's counsel appeared without the debtor. After reviewing the objections at the podium, counsel confirmed that he was objecting to the lack of documentation attached to the claim forms. He emphasized in his presentation that none of the creditors had responded to the objections that he was pressing. According to counsel's arguments, he and his client did not need to conduct any investigation of his client's records prior to filing a claim objection, nor did they need to assert a substantive objection to a proof of claim. He argued that he and his client had

complied with *In re Leverett*, 378 B.R. 793 (Bankr. E.D. Tex. 2007), by disputing all of his client's unsecured debts in her bankruptcy schedules.[7]  He further argued that he had complied with *In re Armstrong*, 320 B.R. 97 (Bankr. N.D. Tex. 2005), by withdrawing the claim objections to the extent the debtor's creditors responded.[8]

According to counsel's arguments, Federal Rule of Bankruptcy Procedure 3001 requires claimants to attach documents to their proofs of claim, and he is the final arbiter on whether creditors have attached sufficient documentation.  His view of the claims allowance process is that he may file objections to whatever proofs of claim he believes do not meet the formal requirements of Bankruptcy Rule 3001 – without conducting any investigation of the factual basis for the objections and without regard to his client's personal knowledge of her obligations to her creditors.  If the creditors respond to his satisfaction, he withdraws the objections.  If the creditors do not contest the objections, or do not respond to his satisfaction, then, according to the debtor's counsel, this Court's only role is to sustain the objections.

At the hearing on July 21, 2010, the Court pointed out to counsel that the debtor had not articulated a substantive grounds for disallowance of the disputed claims under 11 U.S.C. § 502(b)(1).  Rather, the debtor had objected to every single claim filed in her case based on her creditors' failure to attach all of the documents that her counsel alleges are required by Bankruptcy Rule 3001.  The Court raised several concerns about the conduct of the debtor and her counsel: (i) the debtor and her counsel appeared to be

---

[7] In *Leverett*, this Court treated the debtor's statement that he owed an undisputed debt to the claimant as a judicial admission.  *Leverett*, 378 B.R. at 804.

[8] In *Armstrong*, the bankruptcy court for the Northern District of Texas warned that it expected a debtor who filed non-substantive objections to claims to withdraw those objections to the extent the creditors responded.  *Armstrong*, 320 B.R. at 108.

playing games by filing objections based solely on a narrow reading of the proofs of claim – objections that ignored the debtor's personal knowledge of her liabilities to creditors as well as her counsel's duty to conduct a reasonable inquiry prior to filing the objections, and (ii) the debtor's objections appeared to have been filed in bad faith inasmuch as her counsel represented that he had withdrawn every objection to which a creditor had responded.  In light of these concerns, the Court provided the debtor with an opportunity to present testimony regarding any substantive objection to the claims in her case as well as what investigation she did prior to filing each objection to her creditors' claims.  Since the debtor was not present, the Court continued the hearing to August 25, 2010.  The debtor's counsel subsequently filed a motion to continue the August 25th hearing to September 29th in order to accommodate the debtor's schedule, which the Court granted.

At the continued hearing, several members of the firm representing the debtor appeared.  They represented that their client was present in the courtroom.  They did not offer any testimony from her and, once again, failed to establish substantive grounds for disallowance of the disputed claims.  They also failed to offer evidence establishing that they or their client conducted any investigation of the factual basis for her claims objections.  Instead, they filed a legal brief and made legal arguments relating to Bankruptcy Rule 3001 and the shifting burden of proof in the context of an objection to a proof of claim.  As discussed more fully below, however, the cases addressing the parties' respective burdens of proof assume that the underlying claim objection raises substantive grounds for disallowance and that the objection was filed in compliance with Bankruptcy Rule 9011.

## II. LEGAL DISCUSSION

The filing of an objection to a proof of claim initiates a contested matter in which the default requirements of Federal Rule of Civil Procedure 55 apply.  *See* FED. R. BANKR. P. 7055, 9014.  Those default rules do not permit entry of judgments that are not warranted on the merits.  A creditor's failure to respond to a claim objection does not automatically entitle a debtor to the entry of a default judgment. *See, e.g.*, *In re Jasinski*, 406 B.R. 653 (Bankr. W.D. Pa. 2009).  Indeed, a request for entry of default judgment may be denied when objection lacks merit.  *Id.* at 656.

This Court may sustain an objection to a proof of claim only if the objection complies with the requirements of the Code.  Section 502(a) of the Code provides that a timely filed proof of claim is deemed allowed by the bankruptcy court unless a party in interest objects.  11 U.S.C. § 502(a).  If an objection to a claim is raised, § 502(b) provides that the court "*shall allow* such claim in such amount, *except* to the extent that" a grounds for allowance provided by § 502(b)(1) - (9) applies.  *Id.* (emphasis added).  *See also B-Line, LLC v. Kirkland (In re Kirkland),* 379 B.R. 341, 345 (B.A.P. 10th Cir. 2007).  Thus, the Code requires this to overrule a claim objection that does not comply with § 502(b) – even if the claimant does not appear to raise the issue.  *Cf: United Student Aid Funds, Inc. v. Espinosa*, 130 U.S. 1367, 1381 n. 14 (2010) (noting that § 1325(a), which provides that a bankruptcy court "shall confirm a plan" if the plan "complies with the provisions" of chapter 13 and "other applicable provisions" of the Code, "*requires* bankruptcy courts to address and correct a defect in a debtor's proposed plan even if no creditor raises the issue.").

## A. The Debtor's Claim Objections

### 1. Section 502(b) Sets Out the Grounds for Disallowance

Section 502(b) of the Code sets forth nine grounds for disallowance of a claim. 11 U.S.C. § 502(b)(1) – (9).  In particular, a bankruptcy court may disallow a claim if the claim is "unenforceable against the debtor ... under any agreement or applicable law," § 502(b)(1); "is for unmatured interest," § 502(b)(2); "is for [property tax that] exceeds the value of the [estate's] interest" in the property, § 502(b)(3); "is for services of an insider or attorney of the debtor" and "exceeds the reasonable value of such services," § 502(b)(4); is for unmatured debt on certain alimony and child support obligations, § 502(b)(5); is for certain "damages resulting from the termination" of a lease or employment contract, §§ 502(b)(6) and (7); "results from a reduction, due to late payment, in the amount of ... credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor," § 502(b)(8); or was not timely filed, § 502(b)(9).

The debtor in this case has not asserted any of the § 502(b) grounds for disallowance.  The debtor, instead, seeks to disallow the claims at issue based on the failure to attach documents as required by Federal Rule of Bankruptcy Procedure 3001. Bankruptcy Rule 3001 addresses the form and content of claims, requiring, among other things that "[w]hen a claim … is based on a writing, the original or a duplicate shall be filed with the proof of claim."  FED. R. BANKR. P. 3001(c).  The stated purpose of Bankruptcy Rule 3001(c) is to authenticate a claim for evidentiary purposes.  *See id.*, Advisory Committee Note (1983).  A proof of claim "executed and filed" in accordance with Bankruptcy Rule 3001 "shall constitute prima facie evidence of the validity and

amount of the claim" in the event of an objection to the claim.   FED. R. BANKR. P.

3001(f).

Bankruptcy Rule 3001 does not, by itself, establish grounds for disallowance of a

claim.   Rather, Bankruptcy Rule 3001 allocates the burden of proof with respect to a

proof of claim for which an objecting party has raised an objection that would warrant

disallowance under § 502(b).   As the Bankruptcy Appellate Panel for the Tenth Circuit

recently explained: "Bankruptcy Rule 3001 does not enlarge the Debtors' statutory

reasons to disallow a claim; it merely 'defines the process by which [the claims] may be

effected.'"   *In re Kirkland,* 379 B.R. at 345 (citing *In re Cluff,* 313 B.R. 323, 332 (Bankr.

D. Utah 2004)).   If an objecting party asserts only that the claimant's proof of claim does

not comply with Bankruptcy Rule 3001, without asserting a ground for disallowance

provided under § 502(b), a cognizable claim must be allowed.   *Id.* at 343-44 (Section

502(b) "mandates that the court 'shall allow' the claim, except to the extent it falls within

one of nine enumerated categories of prohibited claims.   The statute does not list among

the grounds for disallowance the proof of claim's failure to adhere to the requirements of

the Federal Rules of Bankruptcy Procedure, namely Rule 3001.").   *See also In re Heath,*

331 B.R. 424, 435 (B.A.P. 9th Cir. 2005) ( "objections that relied solely on the alleged

lack of prima facie validity of the proofs of claims ... [are] not a sufficient objection

recognized by Section 502, which deems claims allowed and directs that the bankruptcy

court 'shall' allow claims with limited exceptions ..."); *Dove-Nation v. eCast Settlement

Corp. (In re Dove-Nation),* 318 B.R. 147, at 152 (B.A.P. 8th Cir. 2004) ("even if the

claims had not substantially complied with Rule 3001, the claims are still allowed claims

under Section 502 of the Bankruptcy Code unless the Debtor establishes an exception

13

under Section 502(b)").   The Bankruptcy Rules do not and cannot contravene the substantive rights contained in the Bankruptcy Code.   28 U.S.C. 2075; *In re Waindel*, 65 F.3d 1307, 1309 (5ᵗʰ Cir. 2009).

In a legal brief in support of her claim objections, the debtor urges this Court to conclude that § 502(b) does not set forth the exclusive grounds for disallowance of a claim.   The debtor quotes extensively from *In re Gilbreath*, 395 B.R. 356 (Bankr. S.D. Tex. 2008), arguing that "[p]roofs of claim that are not *prima facie* valid are not automatically deemed allowed."   This argument misreads *Gilbreath* and misses the point in this case.[9]   As the bankruptcy court explained in *Gilbreath*, "[a]lthough incomplete or insufficient proofs of claim are not *prima facie* valid, they are not automatically disallowed."   *Id.* at 364 (citation omitted).   Rather, the insufficiency affects the burdens of proof and production once the debtor objects to the claim.   In this case, however, the debtor asserts no objection to the disputed claims other than the lack of documentation, *i.e.*, their insufficiency.

For all the foregoing reasons, the Court concludes that the plain language of § 502(b) and the Supreme Court's recent opinion in *Espinosa* do not support a "non-exclusive" approach.   Notably, even if the Court were to disallow an otherwise valid claim based solely on the creditor's alleged failure to comply with Bankruptcy Rule

---

[9] In *Gilbreath*, the claimant filed several claims without attaching supporting documentation.   Unlike this case, the debtor in *Gilbreath* denied owing any debt to the claimant – thereby raising a § 502(b) objection to the allowance of the claims.   The court set a hearing on the debtor's objections and then continued the hearing.   The claimant sought to attach documentation to its claims on the eve of the continued hearing.   The bankruptcy court determined that "[c]reditors should not be permitted to file woefully deficient proofs of claim in hopes that the debtor will not object, but then, when the debtor does object, to file amendments at the eleventh hour and rely on those amendments at the hearing.   This is one of the reasons Rule 15 was enacted – to prevent undue prejudice and surprise to litigants and to permit opposing parties time to prepare for trial."   *In re Gilbreath*, 395 B.R. at 367 (citing *United States v. Saenz*, 282 F.3d 354, 356 (5th Cir. 2002).

3001, the debtor would remain obligated to repay the claim after emerging from bankruptcy. The discharge in a chapter 13 case is different than in a chapter 7 case. *Compare* 11 U.S.C. § 727(b) *with* § 1328(a). In a chapter 13 case, upon completion of plan payments, a debtor generally is discharged of all the debts "provided for by the plan or disallowed under section 502" of the Code. *See* 11 U.S.C. § 1328(a). Section 1328(a) does not, by its terms, discharge a chapter 13 debtor of her obligation to repay claims disallowed solely under Bankruptcy Rule 3001.

### 2. The Disputed Claims Are Cognizable

This does not end the Court's analysis. The debtor appears to argue that the lack of documentation has prevented her from recognizing the claims at issue. Although the debtor has artfully avoided any discussion of her personal knowledge and does not appear to deny that she incurred the underlying debts,[10] she nonetheless argues that the Court must disallow the disputed claims because she cannot determine whether she is obligated to the claimants *based solely on the documentation attached to the claims*.

In order to be cognizable in bankruptcy, a pre-petition claim must be based on state or federal law creating a substantive obligation. *See In Matter of Chicago, Milwaukee, St. Paul and Pacific Rv. Co.,* 878 F.2d 182, 184 (7th Cir. 1989) (citing *Vanston Committee v. Green,* 329 U.S. 156, 170 (1946) (Frankfurter, J., concurring)). Although a proof of claim need not include all of the evidence that might be necessary at trial, the proof must contain sufficient information for parties to discern the general basis of the claim. This information generally includes the information required by

---

[10] The debtor does not, deny that she made significant purchases at Nordstrom and Nieman Marcus, for example, and she does not appear to contend that the billing statements she looked at to prepare her schedules were somehow erroneous. The debtor also did not seem to have any trouble recognizing her creditors when she made pre-petition payments to them.

Bankruptcy Rule 3001, namely, (1) the creditor's name and address, (2) the basis for claim (*e.g.*, credit card debt), (3) the date debt was incurred, (4) the amount of claim, (5) the classification of claim (*i.e.*, secured vs. unsecured), and (6) supporting documents. *In re Armstrong,* 320 B.R. 97, 104 (Bankr. N.D. Tex. 2005) (quoting *In re Dow Corning Corp.,* 250 B.R. 298, 321 (Bankr. E.D. Mich. 2000)).

Bankruptcy Rule 3001, however, is not inflexible. Rule 3001 provides that a proof of claim "shall conform *substantially* to the appropriate Official Form." FED. R. BANKR. P. 3001(a) (emphasis added). The information required by Bankruptcy Rule 3001 and Official Form 10 is designed to streamline the claims allowance process by facilitating the administration of claims. Although "compliance is certainly important," a creditor's "mere failure to comply with rules concerning the form and content of proof of claim is not justification under the Bankruptcy Code for judicially invalidating a creditor's otherwise lawful claim." *In re Shaffner*, 320 B.R. 870, 876 (Bankr. W.D. Mich. 2005).

In her legal brief, the debtor cites to numerous cases where a debtor joined a substantive objection to a creditor's claim with an argument that the creditor's claim failed to attach sufficient documentation and so was not *prima facie* valid under Bankruptcy Rule 3001(f). *See, e.g., In re Tran*, 351 B.R. 440, 447-448 (Bankr. S.D. Tex. 2008) (debtor objected that he did not owe a debt to the claimant and that the claimant had failed to attach documents to the claim form sufficient to establish a debt under Texas law); *In re Leverett*, 378 B.R. at 798 (debtor affirmatively denied liability to the claimant and argued that the documents attached to the claim were insufficient to establish a debt under relevant law); *In re Gilbreath*, 395 B.R. at 359 (debtors denied

16

owing the debts and issue and complained that the creditor had failed to attach sufficient documents to its claims).  The debtor, however, has not raised a substantive objection to the claims at issue.  The debtor is attempting to bootstrap a non-substantive objection into a substantive one by asserting that she cannot determine from the documents attached to the claims whether she is obligated to her creditors.

The debtor's protestations of ignorance are puzzling and alarming in light of her personal knowledge of the claims asserted by Neiman Marcus, Target National Bank, and Nordstrom.  The debtor's Schedule F shows that she reviewed billing statements from these creditors when preparing her bankruptcy schedules.  The debtor's Schedule F also acknowledges that she owes a credit card debt relating to a Sears Gold Mastercard account that appears to match the claim filed by PRA Receivables for the balance owed on a "Sears MC."  The only claims the debtor is seeking to disallow that do not appear in her Schedule F are the $260 debt alleged by PRA Receivables for a "J.Jill/D.M. Mgmt" credit card account and the $3,886.75 debt alleged by PRA Receivables for a "Sears MC" account ending in numbers 0216.

Though the proofs of claim to which the debtor objects do not all include elaborate documentation, they sufficiently inform the debtor of the basis of the claims. Each proof of claim was filed using Official Form 10, and each claim describes the basis of the claim as credit card debt, the identity of the holder of the debt, the outstanding balance, the date of the debtor's last payment, and the account number.  It appears to the Court that the creditors made a good faith attempt to comply with Bankruptcy Rule 3001. Moreover, the proofs fulfill Bankruptcy Rule 3001's essential purpose of providing objecting parties with sufficient information to evaluate the nature of the claims.  As

other courts have concluded on similar facts, this Court finds and concludes that the disputed claims "substantially conform" to Official Form 10.  *See, e.g., In re Today's Destiny, Inc.*, 2008 WL 5479109 (Bankr. S.D. Tex. Nov. 26, 2008).

In response to a non-substantive objection, the Court should allow a claim so long as the claim contains sufficient information for an objecting party to discern its basis.  *In re Kirkland,* 379 B.R. 341.  The claims in this case more than satisfy this standard.  The Court, therefore, overrules the debtor's Bankruptcy Rule 3001 objections to the claims of Target National Bank (claim number three in the amount of $9,366.03), Advanta Bank Corp. (claim number four in the amount of $7,236.95), Nordstrom (claim number eight in the amount of $13,568.56), PRA Receivables (for the two Sears credit cards described in claim numbers nine and ten in the total amount of $13,845.61), and PRA Receivables (for the J.Jill/D.M. Mgmt credit card described in claim number eleven in the amount of $260.00).

### 3.  The Documentation is Sufficient

Even if the debtor had properly triggered the claims allowance process by raising a substantive objection to the claims at issue, her objections would nonetheless fail.  The disputed claims substantially conform to Bankruptcy Rule 3001 and, therefore, constitute "prima facie evidence of the validity and amount of the claim."  FED. R. BANKR. P. 3002(f).  The debtor has failed to produce evidence at least equal in probative force to that offered by the proofs of claim.  *In re Rally Partners*, 306 B.R. at 169 (citing *Lundell v. Anchor Const. Specialists, Inc. (In re Lundell),* 223 F.3d 1035, 1041 (9th Cir. 2000); *Sherman v. Novak (In re Reilly),* 245 B.R. 768, 773 (B.A.P. 2nd Cir.2000)).  The debtor's affidavits in support of her objections conflict with the statements in her Schedule F and

fail to address her personal knowledge of the claims at issue.[11]   The claimants, therefore, were not required to produce additional documentation to the debtor (or her counsel) in order to overcome the debtor's objections.  *See, e.g., In re Sandifer,* 318 B.R. 609, 611 (Bankr. M.D. Fla. 2004) (discussing the shifting burden of proof at hearings on claims objections).

### B. The Ethical Obligations of the Debtor's Counsel

Having overruled the pending claim objections, the Court next addresses some of the troubling legal questions raised by the conduct of the debtor's counsel.  The Court first alerted counsel to her concerns in her remarks at the hearings on the objections. Although the creditors have not requested sanctions against the debtor's counsel, this Court may issue an order *sua sponte* for counsel to appear and show cause why they have not violated Bankruptcy Rule 9011(b).  *See* FED. R. BANKR. P. 9011(c)(1)(B).  *See also Merriman v. Security Insurance Co. of Hartford,* 100 F.3d 1187, 1191 (5th Cir. 1996); *Goldin v Bartholow*, 166 F.3d 710 (5th Cir. 1999).   This Court also has the inherent power to impose sanctions in order to protect and maintain the authority and dignity of the court.  *See, e.g., Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46 (1991); *See Chaves v. M/V Medina Star*, 47 F.3d 153 (5th Cir. 1995).   Further, in cases involving an abuse of process, § 105(a) of the Code grants this Court statutory authority to impose "necessary

---

[11] As to the scheduled creditors, the debtor's affidavits contain what appears to be a false statement. The debtor states in each of her affidavits, "I do not have any independent documentation that establishes the amount owed, the correct name of the creditor, the method and amount of any fees, charges, or interest accruing on the account."  In her Schedule F, however, the debtor states that she is listing the balance owed to her general unsecured creditors based on the last billing statements she received from them.  The debtor verified the truth and accuracy of her schedules when she filed them. *See* FED. R. BANKR. P. 1008.  If all of the debtor's statements were true when made, and the debtor had billing statements when she filed for bankruptcy, it would be improper for the debtor to destroy the documents prior to filing objections to all of her creditor's claims.  *See* 18 U.S.C. § 152(7) ("A person who … after the filing of a case under title 11 or in contemplation thereof, knowingly and fraudulently … destroys ... any recorded information … relating to the property or financial affairs of the debtor ... shall be fined under this title, imprisoned not more than 5 years, or both.").

and appropriate" sanctions.  *See, e.g., Support Systems Int'l, Inc. v. Mack,* 45 F.3d 185, 186 (7th Cir. 1995).

Bankruptcy Rule 9011 defines the standard conduct an attorney or party must comply with before signing any petition, pleading, motion or paper.  Bankruptcy Rule 9011 states in pertinent part:

> (b) By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, --
> (1)  it is not being presented for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information and belief.

FED. R. BANKR. P. 9011(b).  Bankruptcy Rule 9011 places an affirmative duty on the attorney or party to investigate the facts and the law prior to the subscription and submission of any pleading, motion or paper.  In other words, it imposes a duty "to stop, think and investigate more carefully before serving and filing papers."  *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 398 (1990).

Here, the debtor admitted in her Schedule F that she had been receiving billing statements from Nordstrom, Target National Bank, and Sears Gold Mastercard, among other creditors, prior to bankruptcy.  Further, she admitted in her Statement of Financial Affairs that she had sent payments to Nordstrom and Nieman Marcus in the months prior to bankruptcy.  The debtor estimated her unsecured indebtedness at $150,360 – not $0.00

– in her chapter 13 plan.  The debtor, however, indicated that all of her unsecured debts were "disputed" in her bankruptcy schedules and signed affidavits in which she stated that she was unable to assess any of the unsecured claims filed in her case due to inadequate documentation attached to the official claim forms.

In their arguments and briefs to this Court, counsel has not addressed the obligation of a debtor's attorney to assure to the best of his or her ability that the schedules are complete and accurate before they are filed.  *See* 11 U.S.C. § 521(a)(1)(B) (requiring the filing of schedules and statements).  *See generally* 4 COLLIER ON BANKRUPTCY ¶ 521.03[3] (15th ed. Rev. 2010) ("The attorney should carefully investigate the affairs of the debtor and make certain that the attorney has all the information needed to prepare full and complete schedules, for it is the duty of the debtor to present intelligible and true schedules.").  It seems clear that counsel deliberately chose to (i) ignore the debtor's personal knowledge, and (ii) conduct no independent investigation prior to filing the debtor's bankruptcy schedules and claim objections.[12] The debtor's Schedule F describes the same dispute as to all of her unsecured debts. Likewise, the debtor's counsel filed the same objection to all of the unsecured claims in the debtor's case – regardless of whether the creditor attached documents to its claim or the nature of those documents, if any.

It appears to the Court that the debtor and her counsel were motivated by the off-chance that the claimants would not respond to the objections and, consequently, that this Court would sustain the objections without substantive review.  "An off-chance does not

---

[12] The debtor's counsel, at best, relied upon the debtor's willingness to sign the affidavits he prepared in support of the claims objections.  However, "[b]lind reliance on the client is seldom a sufficient inquiry...." *Southern Leasing Partners, Ltd. v. McMullan,* 801 F.2d 783, 788 (5th Cir. 1986).  This is especially true in a case such as this where several of the affidavits contain statements that are at odds with her sworn schedules.

satisfy [Bankruptcy] Rule [9011] (investigation must precede litigation)." *Nisenbaum v. Milwaukee County*, 333 F.3d 804, 809 (7th Cir. 2003). "This approach of 'throwing it against the wall and seeing what sticks' is precisely the sort of conduct [Bankruptcy Rule 9011] seeks to counter." *Bernal v. All American Investment Realty, Inc.*, 479 F.Supp.2d 1291, 1329 (S.D. Fla. 2007) (citing *Southern Leasing Partners, Ltd.,* 801 F.2d. at 788 ("[Plaintiffs] sued [defendant] without knowing how he fit into the picture, apparently hoping that later discovery would uncover something. If Rule 11 is to mean anything, and we think it does, it must mean an end to such expeditionary pleadings....")).

The Court is not "blindsiding" the debtor's counsel. After raising concerns about their conduct in open court, the Court invited the debtor and her counsel to present evidence in support of the claim objections as well as their compliance with Bankruptcy Rule 9011. The debtor and her counsel failed to avail themselves of this opportunity. It appears to the Court that the debtor's counsel is unwilling to recognize the ethical obligations of an attorney in preparing bankruptcy schedules, or, with respect to claim objections, distinguish form (Bankruptcy Rule 3001) from substance (11 U.S.C. § 502(b)). Based on the record as it stands, there may be a basis for finding that counsel violated Bankruptcy Rule 9011.

### C. The Debtor's Obligation to Act in Good Faith

Regardless of the advice the debtor may have received from her counsel regarding the claims allowance process, she has an obligation to this Court to act in good faith. To confirm a chapter 13 plan, the bankruptcy court must find, among other elements, that "the plan has been proposed in good faith." 11 U.S.C. § 1325(a)(3). The bankruptcy court also must find, among other elements, "the action of the debtor in filing the petition

22

was in good faith." 11 U.S.C. § 1325(a)(7). Good faith-bad faith in this context is not an esoteric legal concept that only lawyers and judges can understand. The question is whether the totality of the circumstances indicates that the plan is unreasonable or that the debtor is attempting to abuse the spirit of the Code. *Matter of Chaffin*, 816 F.2d 1070, 1073 (5th Cir. 1987).

Here, the debtor is an affluent single woman with stable employment, a six-figure income, and no dependents. She filed a chapter 13 petition for the sole purpose of addressing her credit card debts. The debtor did not incur these debts as a result of any calamity such as an illness or job loss. Further, she was making payments on at least two of her credit card debts in the months prior to bankruptcy.

The only creditors treated under the debtor's plan are her bankruptcy counsel and her general unsecured creditors. In her chapter 13 plan, she proposed to make monthly payments of $3,190 per month. She proposed to use these payments, first, to pay $1,750 to her counsel to satisfy the balance she owed for counsel's fees. She proposed to use the remainder of her monthly payments to repay all of her unsecured debts in full. The debtor estimated her total unsecured debts at $150,360, and she predicted that her payments to unsecured creditors over sixty months would total $170,510. The Court confirmed her plan based, in part, on the debtor's stated intent to pay her unsecured creditors in full.

The debtor, however, did not intend to pay her unsecured creditors in full. She intended to seek disallowance of every single unsecured claim that might be filed in her case when she filed her plan. This intent is evidenced by the fact that she had previously

listed the claims of all of her unsecured creditors as "disputed" in her Schedule F.[13]  If all of these claims had been disallowed, as she originally requested, then she could have sought a discharge after her attorneys were paid in full (*i.e.*, approximately one month after confirmation).  Section 1328(a) provides that when a debtor has completed the repayments required by a confirmed plan, a bankruptcy court "shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title …."  Thus, the debtor was attempting to effectuate a quick liquidation in her chapter 13 case – a result that, as an above-median debtor, she could not achieve in a chapter 7 case.

The debtor failed to articulate any substantive grounds for disallowance of any of the disputed claims under § 502(b).  She did not, for example, deny that she owed unsecured credit card debt to Neiman Marcus.  She simply objected that Neiman Marcus had not supplied her with enough documents.  The debtor's "over-reliance on non-substantive objections to claims," in this case, is "evidence of abuse of the bankruptcy process."  *In re Armstrong,* 320 B.R. at 108.  Unfortunately, the debtor's abuse of the bankruptcy process was not revealed to the Court in time to prevent confirmation of her plan.  The Court, therefore, turns to the question of whether to vacate the confirmation order.

### D. Authority to Vacate Confirmation Order

Section 1330 of the Bankruptcy Code provides:

> On request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was obtained by fraud.

---

[13] If the debtor had legitimate objections to all of the unsecured claims against her, then it is not clear why the debtor needed to file for bankruptcy.

11 U.S.C. § 1330.  The Bankruptcy Code also provides that a bankruptcy court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."   11 U.S.C. § 105(a).  In addition, bankruptcy courts have the inherent power to vacate a confirmation order that has been obtained through a fraud upon the bankruptcy court.  *In re Thomas*, 337 B.R. 879, 888 - 89 (Bankr. S.D. Tex. 2006), *affirmed*, 223 Fed. Appx. 310, 2007 WL 654241 (5th Cir. 2007).

A "fraud on the court" is commonly defined as follows:

> Fraud upon the court should embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.

*Browning v. Navarro*, 826 F.2d 335, 345 n.12 (5th Cir. 1987) (citing 7 Moore, *Federal Practice* ¶ 60.33 at 515 (1971)).  Misconduct such as nondisclosure of facts allegedly pertinent to the matter before the court ordinarily will not constitute fraud on the court. *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1338 (5th Cir. 1978) (citing *Kupferman v. Consolidated Research & Mfg. Co.,* 459 F.2d 1072 (2nd Cir. 1972)).

Here, the debtor obtained confirmation of her chapter 13 plan by representing that she intended to pay all of her unsecured creditors in full.  The Court relied on this representation in finding that the debtor had filed her petition and her reorganization plan in good faith.  The debtor, however, intended to seek disallowance of every single claim filed in her case based on non-substantive objections to their claims.  The Court finds that the conduct of the debtor and her counsel throughout this case establishes that they have acted in bad faith and abused the bankruptcy process.  Their conduct even calls into question the veracity of the schedules filed by the debtor.

The purpose of chapter 13 of the Bankruptcy Code is to allow the long-term repayment of debt through wages. *See* 11 U.S.C. § 1307(a)-(b). The debtor and her counsel deliberately sought to avoid this result. The debtor filed a chapter 13 petition for the sole purpose of using the claims allowance process as a litigation tactic to eliminate any obligation to repay her credit card debts. Importantly, this is not a case where debtor raised legitimate, substantial objections to the merits of the claims against her. The debtor asserted non-substantive objections to all of the claims against her, and her objections deliberately and artfully avoided addressing her personal knowledge, if any, of the debts upon which those claims were based.

As a court of equity, this Court may modify or vacate its confirmation order so long as no intervening right has become vested in reliance thereon. *In re Thomas*, 223 Fed. Appx. at 314 fn.4 (citing *Meyer v. Lenox (In re Lenox)*, 902 F.2d 737, 739-40 (9th Cir. 1990)). *See also, e.g, In re Chinichian,* 784 F.2d 1440 (9th Cir. 1986) (chapter 13 plan confirmation order revoked, *sua sponte,* where debtor filed bankruptcy to "defeat the state court litigation"). The debtor in this case has no right to discharge debts pursuant to a plan that the Court confirmed based on fraudulent and misleading representations of full payment to unsecured creditors. *See In re Thomas,* 223 Fed. Appx. at 314. This Court relies on good faith to function efficiently, *id.* at 315 (citing 11 U.S.C. § 1325(a)(3)), and the Court will not aid and abet the debtor's fraud or her counsel's non-compliance with Bankruptcy Rule 9011. The Court, for all of the foregoing reasons, concludes that grounds exist to revoke the confirmation order.

### III. CONCLUSION

The Court will enter a separate order overruling the debtor's objections to claims and vacating the order confirming the debtor's plan. The chapter 13 trustee is directed to terminate distributions under the plan. The debtor will have 30 days from the date of the Court's order to file an amended plan if she cares to do so. If the debtor does not file a new plan, or if the Court does not confirm the debtor's new plan, the Court may consider dismissal of this case.

It appears from the face of the claim objections and the debtor's affidavits that the debtor's counsel at Armstrong Kellett Bartholow P.C. may have ignored the debtor's personal knowledge and may have failed to conduct any investigation of the objections prior to filing them. This investigation should have included, at a minimum, a review of the records used by the debtor to prepare her bankruptcy schedules. The Court will schedule a separate hearing to consider whether the debtor's counsel has abused the bankruptcy process or violated Bankruptcy Rule 9011(b) and, if so, appropriate sanctions, including disgorgement of any fees received by counsel in this case.

Signed on 03/31/2011

*Brenda T. Rhoades*      SD

HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE

27